**IN THE COURT OF APPEALS OF IOWA**

No. 18-1872
Filed January 9, 2019

**IN THE INTEREST OF K.P. and A.B.,**
**Minor Children,**

**J.P., Father of K.P.,**
        Appellant,

**B.B., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Monroe County, William Owens,

Associate Juvenile Judge.


        A mother and father appeal the termination of their parental rights in their

children.  **AFFIRMED ON BOTH APPEALS.**


        Michael S. Fisher of Fisher Law Office, Oskaloosa, for appellant father.

        Mary Baird Krafka of Krafka Law Office, Ottumwa, for appellant mother.

        Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

        Kevin S. Maughan of Maughan Law Office, Albia, guardian ad litem for

minor children.


        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

The juvenile court terminated Brooklyn and Joseph's parental rights in their child, K.P., pursuant to Iowa Code section 232.116(1)(h) (2018). The juvenile court also terminated Brooklyn's rights in her child, A.B., pursuant to Iowa Code section 232.116(1)(f). A.B. is Brooklyn's child from another father. A.B.'s father does not appeal the termination of his parental rights. In this appeal, Brooklyn claims there is insufficient evidence supporting the statutory grounds authorizing the termination of her parental rights in K.P. and A.B. Both parents claim the termination of their parental rights is not in the best interest of their respective children.

K.P. and A.B. first came to the attention of the Iowa Department of Human Services ("IDHS") when A.B. was admitted to the emergency room with bruising on his cheeks, chest, arms, legs, buttocks, and under his face. IDHS founded a report for physical abuse. IDHS also entered into a safety plan with Brooklyn. Pursuant to the safety plan, Joseph would not be allowed to supervise A.B. However, Joseph continued to supervise the child. In June 2016, A.B. was lacerated on his chin while in the care of Joseph. The laceration was three centimeters long and required sutures. IDHS performed drug testing on A.B. The child tested positive for exposure to marijuana.

The juvenile court subsequently adjudicated the children in need of assistance.

IDHS continued to provide services to Brooklyn and Joseph with the goal of returning the children to their care. The parents continued to make progress, and

visitation advanced to unsupervised overnight visitation with the expectation the children would be returned to the parents' care.

The permanency goal changed to termination of parental rights following an incident of physical abuse to A.B. In February 2018, Joseph and Brooklyn had unsupervised visitation with the children for several days. After that visit, A.B. exhibited visible bruising, prompting IDHS to initiate an examination. The examining physician noted adult hand marks around A.B.'s neck, an adult bite mark on one buttock, and bruising on A.B.'s penis. IDHS investigated the incident and founded a report of abuse.

Upon the State's petition, the juvenile court terminated the parents' rights, and the parents timely filed this appeal. We review termination-of-parental-rights proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014); *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). However, "[w]e give weight to the findings of the juvenile court, particularly with respect to the credibility of witnesses." *In re B.N.*, No. 00-0220, 2001 WL 57987, at *1 (Iowa Ct. App. Jan 24, 2001); *accord D.W.*, 791 N.W.2d at 706. The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) "termination of parental rights is in the best interests of the children." *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

We first address Brooklyn's claim there is insufficient evidence supporting the termination of her parental rights. The juvenile court terminated Brooklyn's

parental rights in A.B. pursuant to Iowa Code section 232.116(1)(f) and her parental rights in K.P. pursuant to Iowa Code section 232.116(1)(h). Under those sections, the State was required to prove by "clear and convincing evidence" that "at the present time" the "child cannot be returned to the custody of the child's parents as provided in section 232.102." Iowa Code § 232.116(1)(f)(4), (h)(4). "At the present time" means at the time of the termination hearing. *See A.M.*, 843 N.W.2d at 111. We have interpreted these statutory provisions to mean the State was required to prove the child could not be returned to the parent without creating "an appreciable risk of adjudicatory harm" to the child. *See In re E.H.*, 2017 WL 2684420, at *1.

Brooklyn contends there is not clear and convincing evidence Joseph physically abused A.B.; she attributes A.B.'s injuries to his clumsiness. We disagree. The child suffered several non-accidental injuries resulting in bruising and lacerations. In one instance, the child had adult bite marks on the child's buttocks. IDHS founded a report of physical abuse based on these facts. The record also shows Joseph exhibited an aggressive attitude consistent with the infliction of physical abuse. Joseph repeatedly told Family Safety, Risk, and Permanency Services ("FSRP") workers, "I can talk [with] and treat my kids how I want." During one supervised visit, Joseph grabbed K.P. aggressively. When the supervising worker corrected him, Joseph threw a fork across the room. Joseph's threatening behaviors were also directed at workers in the case. Joseph told one worker that, as a former member of the National Guard, he was not trained to protect and serve but rather was trained to harm and kill. He also told her, "I will speak with you in any manner I see fit. As it is my American right. And don't forget

your place, woman." This conduct establishes a risk of physical harm to the children. *See In re K.K.*, No. 11-0734, 2011 WL 2695740, at *4 (Iowa Ct. App. July 13, 2011) (finding that father's aggression toward caseworkers supported a finding that he could not safely parent); *In re M.J.S.*, No. 11-0637, 2011 WL 2556810, at *3 (Iowa Ct. App. June 29, 2011) ("The father has exhibited aggressive behavior towards others, including caseworkers, in the presence of the child. It is clear the father is not a safe and appropriate placement for the child . . . ."); *In re L.K.*, No. 11-0303, 2011 WL 1818417, at *5 (Iowa Ct. App. May 11, 2011) ("[T]he fact remains that the father's unstable behavior creates an unhealthy situation for the children's development.").

By extension, Brooklyn's failure to protect A.B. from the risk of physical abuse establishes the grounds for termination of her parental rights in both children. *See In re J.C.*, No. 13-0819, 2013 WL 3864586, at *2 (Iowa Ct. App. July 24, 2013) ("Here the circumstances giving rise to adjudication still exist because the parents remain steadfast in their lack of an explanation for the injuries."); *cf. In re I.M.*, No. 16-0685, 2016 WL 4036256, at *1 (Iowa Ct. App. July 27, 2016) ("A child cannot be returned to the care of the mother where her abusive paramour presents a risk of harm to the children."). She allowed Joseph to supervise the children despite multiple founded reports of abuse and a safety plan stipulating that Joseph would not supervise the children. Brooklyn's failure to monitor Joseph's interaction with the children resulted in multiple non-accidental physical injuries to A.B., including adult bite marks on the child's buttocks. Although there have been no reports that Joseph abused K.P., the abuse of one child in the home establishes an appreciable risk of harm to other children in the home. *See In re*

*L.H.*, 904 N.W.2d 145, 152 (Iowa 2017) ("[T]he parent's abuse of one child places the parent's other children in danger of abuse."). A parent's failure to protect his or her child from abuse militates in favor of termination. *See In re C.A.*, No. 13-1987, 2014 WL 1234470, at *2 (Iowa Ct. App. Mar. 26, 2014) (affirming termination of parental rights when mother "minimized or denied . . . the children's founded reports of physical abuse and thus refused to meaningfully address the issues"); *In re K.M.R.*, 455 N.W.2d 690, 692 (Iowa Ct. App. 1990) ("[T]he parents' inability to admit to the abuse and failure to protect the children from abuse [i]s a factor supporting termination of parental rights.").

Brooklyn argues that her participation in therapy, stable employment, stable home, and cooperation with FSRP should have precluded termination. Such factors do support reunification, however, the court cannot consider those factors in isolation. The court looks at the totality of the circumstances when deciding whether to terminate a parent's rights. *See In re D.V.H.*, No. 06-0563, 2006 WL 1628093, at *2 (Iowa Ct. App. June 14, 2006). The case has been pending for over two years, but the physical abuse continued throughout. Termination of parental rights is intended to be a preventive remedy, protecting the child from future harm. *See In re Ponx*, 276 N.W.2d 425, 428 (Iowa 1979); *In re D.T.*, 418 N.W.2d 355, 356 (Iowa Ct. App. 1987). We need not wait until A.B. or K.P. suffer additional physical abuse prior to terminating the parents' rights. The statutory grounds authorizing the termination of Brooklyn's parental rights are supported by sufficient evidence.

We next address the parents' contention termination of their respective parental rights is not in the best interest of the children. In determining the best

interest of the children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2). The court looks "to the child[ren]'s long-range and immediate interests." *In re C.D.*, No. 01-0472, 2001 WL 1205364, at *1 (Iowa Ct. App. Oct. 12, 2001); *accord In re J.M.*, No. 16-0276, 2016 WL 2744793, at *1 (Iowa Ct. App. May 11, 2016).

We conclude the State proved the termination of both parents' parental rights is in the best interest of the children. This case has been pending for a significant amount of time, and the parents have been provided with extensive services. Despite the receipt of services, A.B. suffered physical abuse during unsupervised visitation. The children have a need for permanency. Subjecting them to an appreciable risk of physical abuse by maintaining the parental relationships for an additional period of time is untenable.

For these reasons, we affirm the decision of the district court to terminate both Brooklyn and Joseph's parental rights.

**AFFIRMED ON BOTH APPEALS.**